We'll move on to the next case of the morning. It's Sorus v. Bolson Materials, number 181144. Mr. Wilson. Thank you, Your Honors. May it please the Court. This is a case of contract interpretation. Bolson signed and delivered to Sorus a nondisclosure agreement called a secrecy declaration in which Bolson covenanted to maintain the confidentiality of Sorus's confidential information in product samples. The secrecy declaration required that the confidential information in the samples would be used by Bolson solely for Bolson's internal evaluation for potential use in its own future products. This Court should reverse the summary judgment below and remand the case for trial. The district court misinterpreted the secrecy declaration by holding that Article 10 authorized Bolson to disclose Sorus's confidential information in a patent application. Because it's a case of contract interpretation, the first place to start, of course, is the contract language. The secrecy declaration has an introductory paragraph and ten articles. The introductory paragraph, Article 1, Article 2, Article 3, Articles 5, 6, 7, 8, and 9 each impose confidentiality obligations on Bolson or otherwise limit Bolson's rights to use the confidential information. Article 4 expressly lists five exceptions to Bolson's confidentiality obligations and pursuing a patent is not listed among the five exceptions. So, if, as the district court held, the text of the secrecy declaration authorized Bolson to disclose Sorus's trade secrets, two things have to be true. First of all, Article 10 must set forth an exception to all of the other terms of the secrecy declaration. And secondly, relatedly, Article 10 must, by its language, authorize the disclosure of confidential information. But neither of these propositions is correct. First of all, Article 10 does not set forth an exception to Bolson's confidentiality obligations. So, what's the point of Article 10? The point of Article 10 is that it declares in writing the scope of patents that Bolson can pursue. And that was an important thing. Notwithstanding Article 6, which is a prohibition on disclosure, correct? Correct. Okay. And so this goes to my second point, that the language of Article 10 does, it has to, if this is going to constitute an exception to Bolson's confidentiality obligations, Article 10 has to say in words something to the effect that in pursuing these patents, Bolson may disclose Sorus's confidential information. But it does not say that. But it says, notwithstanding Article 6, which says he shall not file any application for a patent using any piece of the confidential information. Correct. That is what it says, Your Honor. But words, the actual words matter. Can I ask you, Counsel? Yes. What is it in the 171 patent that you think blows your secrets? We list citations in the brief, Your Honor. But there are passages about details about including SEBS, which is a copolymer particle, and there are percentages of SEBS being included, the effect of including the SEBS particles, how it affects the branching and flexibility of the G polymer. So there were several things that were disclosed by Sorus that went into the patent application. I guess what I don't understand about, or I'm having a hard time with on your position, is let's just suppose 10 is not there for a second, and let's just focus on 6. Yes. Okay. 6 is saying, Bolson cannot file an application for a patent using any CI. Right. Just kind of categorically. Okay. So as drafted, 6 is definitely taking care to speak to CI and protecting CI. Yes. Okay. We then come to 10, and it just starts by broadly carving out 6, notwithstanding 6, et cetera, et cetera. Yes. Not saying a word about protecting CI, and that it easily could have. Well, it easily could have, but you have to look at what Article 10 actually says. What it says is, notwithstanding Article 6, Bolson is free to patent and protect new applications using G polymer in that particular area. So notwithstanding Article 6, Bolson has the right to... But notwithstanding Article 6 has content. It's notwithstanding the provision above that prohibits use of CI to pursue a patent, comma, et cetera. Yes. Notwithstanding is a word that designates contrast. Article 6 is a restriction on patent rights. Article 10 is permissive of patent rights. That is a contrast. It makes sense to use the word notwithstanding as a conjunction. It's a conjunctive word. They don't need your permission in a contract, though, to pursue a patent. They don't need it, but they wanted it. I mean, if we're going to look at the extrinsic evidence, he asked for some declaration of what rights he would have to pursue patents. And I can say, lawyers write all the time, notwithstanding anything to the contrary herein. That doesn't mean that everything else herein conflicts with what we just wrote. It is a fail-safe, call it a boot-and-suspenders approach to writing. And the record, again, if you're going to look outside the text of the contract, the extrinsic evidence is that there were not lawyers involved with this writing. And what we do know is that the whole purpose of this document is to protect the confidentiality of this information. And remember as well, G-Polymer, it's a material, Your Honors. It's a material. It has use in hundreds of different applications, potentially thousands of different applications. And the purpose of Article 10 is to say that Bolson is free to patent a new application that uses G-Polymer. That uses G-Polymer. That's all it says. And the draft of the agreement said just that. Sorry? A prior draft of the agreement, right, or an earlier version or the pre-final said just that. And then the final version adds the notwithstanding. Yes, it does, Your Honor. And importantly on your point, Mr. Heenan signed three versions. One, two of them did not have this language. The third one did have that language, so that language wasn't material to him. It didn't matter. He was happy to sign it, and he did sign it. I think it was six weeks or more in advance without that language. Moreover, the important point is that if you're going to say that the notwithstanding clause points out a contrast between Article 6 and 10, you have to say, well, what portion of Article 6 is it in contrast with? The overlap is patent rights. 6 is a restriction on patents. 10 is an authorization of patents. And it's just like my analogy in my brief. If I say to you, don't destroy my car, but notwithstanding the fact that you cannot destroy my car, feel free to use my car in your own business. Notwithstanding that fact, feel free to use my car. Does that mean that I'm telling you to go ahead and destroy my car when you're using it in your own business? No. This is the question is, what did the parties actually intend? And if you look at the document they said. But let me ask you, if I could, Mr. Wilson, to, if we don't agree with everything you say about the interpretation of the language, does this case wind up depending, in your view, on whether the defense disclosed too much information that was unnecessary in the 171 patent application, too much to, more than was needed to comply with the written description and enablement requirements? Your argument in your brief seemed to be they didn't have to do this, right? Well, one issue, I don't mean to dodge your question at all, but one question is what did the contract language permit, and then there's the question of in this particular set of facts. To get the 171 patent, my answer is no. They would not have needed to disclose our confidential information. Okay. Yet they did, right? They did. Okay. Does, I'm trying to imagine the construction of a contract, though, that would depend on that sort of assessment of necessity, particularly when you're dealing with the Patent and Trademark Office. Are we supposed to, or is a jury supposed to second-guess whether he provided too much information? Usually in patent litigation, the fight is over whether there's enough, right? Fair enough. In this case, under Article 10, the only rights that Bolson had were to pursue patents of new applications using DeepPolymer. He didn't have the right, he doesn't declare that he has the right to do anything with our confidential information. It doesn't say a word about confidential information. It does say notwithstanding Article 6, I understand that, but it doesn't say that he has the right to do anything with, he can't disclose our confidential information when he's filing a patent application. I don't know why, I guess I still am hung up on why Paragraph 10, why it wasn't written somewhat along the lines of Paragraph 6, if what you wanted to do was protect the CI. So what you could have done is said Bolson is free to patent, et cetera, but agrees not to disclose CI without the prior written consent of Nippon in accordance with Article 6, or just period. It's very, very easy to protect the CI in Paragraph 10. Your Honor, if you or I were writing this, we might write it differently. But what they did wrote, you just have to look to the words that were used. And what and- It's saying nothing about protecting CI. Nor does it say anything about using, disclosing CI. And as I put on page 6 of my reply brief, a red line of what the defendants are actually suggesting that the contract says. You know, what the defendants are arguing is, well, implicitly, not explicitly, but implicitly, Article 10 says, notwithstanding anything to the contrary in this agreement, Bolson is free to disclose confidential information and the results of the evaluation when patenting and when protecting new applications. But it doesn't say that either. And so what you have to do is you have to look to what is the actual substantive rights that were given in Article 10. And what the rights that were actually given are the right to pursue certain categories of patents. It doesn't say anything about confidential information. Unless the Court has other questions, I'll save the remainder of my time. All right. Thank you, Mr. Wilson. Thank you. We'll next hear from Mr. Gudu. Thank you. Gudu. Okay. Thank you. For defendants. May it please the Court. Alex Gudu for Bolson Materials International Corporation and Timothy J. Heenan. This case turns on the plain language interpretation of unambiguous terms in the party's contract, the secrecy declaration, and in particular on the meaning of Article 6 and Article 10, which must be read together. Judge Norgel's opinion provides the only reasonable interpretation of those two provisions and it should be affirmed. As Judge Norgel explained, because Article 10 begins with the phrase, notwithstanding Article 6 hereof, the language of Article 6 must be read in conjunction with Article 10. And I think it's important to look specifically at that language. Article 6 says, Bolson shall not file any application for a patent or other intellectual property using any piece of the confidential information or the results of the evaluation without the prior written consent of NEPOM. What does Article 10 say? It says, notwithstanding Article 6 hereof, Bolson is free to patent and protect any new applications using G-polymer in the specific area of fused deposition method rapid prototyping equipment and methods. So as a result, Judge Norgel explained that the plain language interpretation of Article 10 is as follows. In spite of the requirement that Bolson and Heenan shall not file any application for a patent or other intellectual property using any piece of confidential information or the result of the evaluation without the prior written consent of NEPOM and source, Bolson and Heenan are free to patent and protect new applications using G-polymer in the specific area of fused deposition method rapid prototyping equipment and methods. Your Honors, this is the only interpretation of the secrecy declaration that harmonizes all of the provisions in the document. And as a result, it's clear that Bolson and Heenan were permitted to do exactly what they did here, which was patent and protect their new application using G-polymer in the specific area of fused deposition method 3D printers. Because... Good, I've got a basic question. I'm a little rusty on patent law at this point. I'm familiar with a device patent, a method patent. Is an application patent something different? It's the same as a method patent, is my understanding, Your Honor, although I'm not a patent attorney. Thank you. The district court's plain language interpretation gives meaning to the terms in the secrecy declaration. And the way to determine that is to look at those terms. So Article 2, 3... Why would they ever agree to that? Why would Soros ever agree to this? Well, it's because Soros was not in the 3D printing industry prior to its work with Bolson. And it wanted to access the industry. And, in fact, that's what the extrinsic evidence explains, is that the parties saw a vast potential. And Swager, which was Soros' only contact with Tim Heenan at the time the agreement was... No, no, no. My question's, I guess, a little more general. Why would the parties go to the trouble of putting an NDA together like this and then authorize that which they clearly intend to keep confidential to be filed with the U.S. Patent Office? And I think the answer to that, Your Honor, is it's because they wanted to limit the use to the one use that actually occurred here, which was the filing of the patent in the specific area of fused deposition method and rapid prototyping machines. In other words, they wanted to make it clear that that's the only thing that Bolson could do with the confidential information. It could seek to obtain a patent over a new application using the confidential information in that one area. So, for example, Bolson couldn't take the information and attempt to obtain a patent over a different kind of 3-D printing process like stereolithography or selective laser sintering. But Paragraph 6 is clear, right? If you're going to go seek a patent, you can't use the CI to do that. So why would they just completely gut that in Paragraph 10 by making more specific what patents can be pursued? Because of the monetary incentive to the parties of so doing. Because the only party who manufactures G-Polymer is Nippon, which Soros is the exclusive distributor of. So they're saying, if we can do this, if we can finally get into this market, it's worth it. And we'll make money from it and we'll be protected because the only entity that you can get the product from is us. No one else can make it. Let me turn back to the view of the language read together. So opposing counsel mentioned Article 4 as being the sole area in which exceptions to the confidentiality provisions are addressed. And I want to touch on that a little bit because I think that that does not follow the plain reading of the contract. Article 4 does list exceptions to the parties' confidentiality, including, for example, if the information is already public, et cetera. But it's not the only place in the agreement where confidentiality exceptions are found. Obviously, look at the language of Article 6. Article 6 says you can't use this information for any purpose without our consent. So that is another exception, which proves that Article 4 is not the only place in the agreement where exceptions to confidentiality obligations are found. Moreover, if you apply the logic of Soros' argument here, it would require the rejection of Article 6 because Article 6 doesn't say notwithstanding Articles 1, 2, 5, 7, 9, et cetera. And yet there's no challenge to Article 6's validity. So the same challenge shouldn't apply to Article 10. In addition, Soros was the drafter of Article 10. Soros placed Article 10 in its position. So it shouldn't be heard to now come up to the court and say, well, Judge, we didn't put in Article 4, so therefore it doesn't have any meaning. Mr. Good, I've got to say one of the oddest things about this case is that the defendants Mr. Heenan managed to submit this patent application just two weeks after signing the nondisclosure agreement? He submitted a provisional filing, which essentially, in layman's terms, is a placeholder. It says this is what we're working on, this is what we anticipate filing our patent on. And then a year later Did the application include confidential information? I believe Soros contends that it does. For purposes of summary judgment, we've assumed that that's the case, but we haven't actually reached that point. But nonetheless, the actual patent application was filed a year later after development work had been done, after information was exchanged between the parties, including information that Soros contends is confidential and that ended up in the patent application, to which no objection was raised. Now, Soros also claims that Article 6 and Article 10 don't conflict, which is, I think, again, a misreading of the contract. Article 10 says, notwithstanding Article 6 hereof, notwithstanding part of Article 6, and that would require, in order for the Court to conclude otherwise, that we would have to read language into the agreement. It would have to say something about confidential information in Article 10, but it doesn't. And, in fact, that exact language, notwithstanding Article 6 hereof, must have meant something to Soros, because Soros was the party that proposed that. We heard a discussion earlier of the facts about the prior versions of the agreement not having notwithstanding. Well, the final version and the actual version of the agreement that's at issue here, when it was sent to Mr. Heenan, it was sent with, by Mr. Swager to Mr. Heenan, and he said, I've added, notwithstanding Article 6 hereof, to avoid any discrepancy between Article 6 and Article 10. So, it clearly meant something to Soros. I think, also, it's worth noting that Soros' arguments ignore the reality of the patent process, and probably more fundamentally render Article 10 illusory. Because the reading that Soros proposes of Article 10 is simply that it allowed Bolson to obtain a patent. That's it. In fact, in their brief, they describe it as, Bolson was permitted to mention that its process worked with G. Polymer, but nothing else. Well, Bolson could already do that, whether it entered this agreement or not, because this agreement governs the use and disclosure of confidential information. That's what Soros has control over. Soros doesn't have control over Bolson's ability to seek and obtain patents. So, to read Article 10 as they suggest would essentially mean that Soros says Article 10 gave Bolson nothing. No ability, nothing. He didn't negotiate for anything. And that's inconsistent with basic principles of contract construction. I would also add on the analogy about what, Soros offers the analogy that you can use my car, including for your work, but don't destroy it without my consent. And that's what they say. That's what this agreement means. But that analogy is incomplete, because it ignores the nature of the work that is expressly authorized by the agreement. The real analogy would be you can use my car, including for work, and don't destroy it without my consent, but your work is a demolition derby. Of course, in some way, you're going to have to disclose something about G. Polymer in a patent in order to convince the U.S. Patent and Trademark Office that you've got a new application, a new invention, something worthy of a patent. And that's particularly true if you look at the definitions used in the agreement. The secrecy declaration defines confidential information as NIPON's proprietary confidential information. So everything about G. Polymer, and that's consistent with the testimony from Soros' own witnesses, that at the time this agreement was negotiated, every detail about G. Polymer was confidential. And it's clear that in order for Bolson to obtain a patent, it had to say something about what it was doing to distinguish the patent from the prior art in the field. So why isn't there a factual dispute about whether the patent application disclosed more than is necessary? Because the language of the agreement makes it clear that every single thing, that every single fact, every single piece of information about G. Polymer was considered confidential. Therefore, anything that Bolson said, whatever it was, Soros considered it to be confidential. And Article 10 specifically permitted Bolson to do that, to disclose that information if it was seeking a specific kind of patent involving G. Polymer. That's what the parties negotiated. And the fact that there are – and I think, too, Your Honor, that we should focus a little bit on the arguments about the business case for this. I think we've gone over it a little bit, but I think it's worth noting that this is the agreement that Soros made. And this is the agreement that it negotiated. In fact, the secrecy declaration is a standard form that it had used. It made this agreement, and it made this agreement because this was a new opportunity for it to enter the field of 3-D printing, fused deposition method 3-D printing. Tim Heenan had the know-how and had the ability to modify the product to be used in that field, and Soros saw that opportunity and took it. So unless the Court has any further questions, we just ask that the decision of Judge Nogle will all be affirmed. Okay. Thank you, Mr. Goode. Rebuttal, Mr. Wilson. With regard to my car analogy, Your Honor, counsel says, well, what if their business was using my car for a demolition derby? What sense does that make? That illustrates very well why the interpretation of this contract that they are proposing is commercially ridiculous. Why would I say, don't use my car, I mean, don't destroy my car, but notwithstanding that, feel free to use my car in your own business when I know that he's in a demolition derby? That makes no sense whatsoever. Counsel argued that, well, we get a note here. It says, notwithstanding Article 6 hereof, and that's the determinative clause of Article 10. Well, it does not say, notwithstanding Article 2 hereof, which requires Wilson to keep the confidential information strictly confidential, it does not say, notwithstanding Article 3 hereof, which limits the disclosure of trade secrets to internal personnel on a need-to-know basis only, it doesn't say, notwithstanding Article 9 hereof, which says that Wilson has no right to or license in any of the trade secrets. It doesn't say any of those other things. So this is a question, a true question of contract interpretation. The language is not explicit. And the question is, what is a commercially reasonable implication from the words that were used? And the only commercially reasonable implication is that the words of Article 10 are limited to declaring the categories of patents that Bolson can pursue, because he wanted some written declaration of that. So for all of those reasons, Your Honor, the Court should reverse. Okay. Thank you, Mr. Wilson. Thank you, Mr. Good. Thanks to all counsel. The case is taken under advisement.